IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES ALLEN SHEARD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11-cv-575-TFM |
| ) | (WO) |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**I. Introduction**

Plaintiff James Allen Sheard ("Sheard") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that he is unable to work because of a disability. His application was denied at the initial administrative level. Sheard then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined by the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision is due to be reversed and this case be remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Procedural History

### A. Introduction

Sheard was 59 years old at the time of the hearing and has a high school equivalency diploma. (R. 36, 49.) He served in the United States Marine Corp between October 1967 and November 1976, including two tours of duty in Vietnam, and was awarded the Vietnamese

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

Cross of Gallantry. (R. 194.) Sheard has prior work experience as an assembler of bicycles and furniture at Wal-Mart. (R. 37-38.) Sheard alleges that he became disabled on March 1, 2000, due to numbness and decreased strength in his hands and arms, a shoulder injury, neck, back and knee pain, a heart condition, and mental health problems, including depression. (R. 35, 53.) After the hearing, the ALJ found that Sheard suffers from severe impairments of history of bradychardia, status post pacemaker implant; mild arthritis, shoulders; arthritis/bursitis knees; history of substance abuse/dependence (marijuana and alcohol); mild depression; generalized anxiety disorder; and history of minimal fracture at C4, with degenerative disc disease of the cervical spine and a non-severe impairment of hypertension. (R. 18.) The ALJ also found that Sheard is unable to perform his past relevant work, but that he retains the residual functional capacity to perform nearly the full range of light work with limitations. (R. 20.) Testimony from the vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Sheard could perform, including work as a dispatcher, product assembler, and sales/ticket seller. (R. 23.)

### B. Plaintiff's Claims

As stated by Sheard, he presents the following issues for the Court's review:

(1) The Commissioner's decision should be reversed because the ALJ's RFC assessment is not supported by substantial evidence.

(2) The Commissioner's decision should be reversed because the ALJ failed to properly evaluate the Claimant's subjective complaints of pain.

(3) The Commissioner's decision should be reversed because the ALJ failed to assign appropriate weight to the disability

determination of the Veteran's Administration.

(Doc. No. 12, p. 6.)

## IV.  Discussion

Sheard raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of all of Sheard's specific arguments because the court concludes that the ALJ erred as a matter of law and, thus, this case is due to be remanded for further proceedings.

Sheard asserts that the ALJ erred in relying solely on the opinion of a non-examining physician when determining that he has the mental residual functional capacity to perform work. He also contends that the ALJ mistakenly relied on Exhibit 9F when questioning the vocational expert.

> At Step Four of the sequential evaluation, the ALJ found as follows:
>
> From the records it is clear that the claimant has no mental health related hospitalizations and no ongoing regular treatment by any mental health providers. The VA personnel, when assessing his overall functioning, even with clinical presentations indicating some issue, have consistently given him a GAF score of 60, which indicates at the most only moderate limitations, being only one point away from indicating "mild" limitations.  After my own review of the record I find that the claimant's "B" criteria mental health considerations are: mild limitations in the area of social functioning, mild limitations in the areas of activities of daily living, perhaps moderate limitations in maintaining concentration, persistence and pace, with no episodes of de-compensation demonstrated in a work or work like setting. . . .

(R. 20.)

When finding that Sheard has the mental residual functional capacity to perform light work, the ALJ also found as follows:

> . . . [T]he claimant would have the following mental limitations: slight limitation in the ability to understand, remember, and carry out short, simple instructions and to make judgments on simple work-related decisions; a moderate limitation in the ability to understand, remember and carry out detailed instructions; a slight limitation in the ability to interact appropriately with the public, supervisors, and co-workers and to changes in a routine work setting; and a moderate limitation in the ability to respond appropriately to work pressures in a usual work setting. The claimant should work in an environment of routine changes, no multiple or rapid changes.

(R. 20.)

The ALJ bases his finding that Sheard has the residual functional capacity to perform light work solely on the following:

> Based on the evidence of record, on July 29, 2008, Dr. Robert Estock, a consulting physician with DDS, completed a Psychiatric Review Technique Form and stated that the evidence was insufficient regarding a mental impairment. The claimant's disability claim was denied for insufficient evidence for the timeframe of the alleged onset date through the claimant's date last insured, but a GAF score of 60 from the period, indicating no more than moderate mental limitations, was noted. (Exhibit 5F, P. 11-13).

(R. 22.)

The record indicates that Dr. Estock, a non-examining consultative physician, completed a psychiatric review technique form in which he merely summarized some of the mental health records between March 2000 and August 2000 and recommended denial of Sheard's claim based on insufficient evidence. Dr. Estock based his findings on the following:

> The CL is 57 YO with 13 YOE. He alleges several physical impairments rated insufficient evidence. Medical evidence in his case file shows a dx. of Maior Depressive Disorder and the CL was positive for PTSD in the past. His AOD is 3/1/00. His DLI expired 3/31/02. Per MER from VA Hospital Pt. has a hx. of depression. 8/27/2000 Diag: Alcohol Abuse/Bereavement. Dermatitis, Carpal Tunnel Syndrome; Arrythmia Pt. has a pacememaker. GAF 60.

(R. 597.)

In his analysis, the ALJ merely adopted Dr. Estock's conclusory opinion without

6

considering other medical evidence in the record. Taken alone, the opinion of a non-examining physician does not constitute substantial evidence to support an administrative decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir 1990). The ALJ's recitation of a non-examining physician's findings without considering all of the relevant mental health records is simply deficient as a matter of law.

The medical records indicate that Sheard suffered from several mental health conditions between the alleged date of onset, March 1, 2000, and the date he was last insured, March 31, 2002. During an initial mental health evaluation at the VA Medical Center on July 25, 2000, Sheard reported that his wife passed away in February and that he was anxious, distracted, depressed, forgetful, and unmotivated. (R. 422.) The clinical social worker noted that Sheard's mood was anxious and that his GAF score was 60. (R. 425.) After reviewing the clinical social worker's notes on August 9, 2000, Dr. Andres Bernier Rivera, a staff psychiatrist, diagnosed Sheard as suffering from alcohol abuse/bereavement, recommended that he proceed with the VA substance abuse treatment program, and prescribed Trazodone for insomnia. (R. 427.) On August 21, 2000, Sheard returned for a follow-up appointment at the mental health clinic, reporting that Trazodone caused "grogginess." (R. 420.) His prescription for Trazodone was discontinued. (*Id*.)

On August 31, 2000, Sheard went to the substance abuse treatment center at the VA Medical Center, reporting serious depression, anxiety, and tension and trouble understanding, concentrating, and remembering over the last 30 days and lifetime.[4] (R. 419.) On January 25,

---

[4] The nurse noted her belief that "the information provided concerning psychiatric problems was significantly distorted by misrepresentation." (R. 420.) The medical records, however, indicate that the nurse is not a mental health specialist or a practitioner of medicine. (Id.) Consequently, the nurse's conclusory assessment concerning the severity of Sheard's psychiatric problems should be afforded no weight, especially

2002, Sheard sought treatment at the VA Mental Health Center for depression and requested entry into an alcohol class. (R. 346.) The mental health consultant observed that Sheard was unshaven, disheveled, and malodorous and that his mood was nervous with a blunted affect. (*Id*.) During the evaluation, Sheard reported that he slept twelve or more hours a day, that he lacked motivation to get out of bed, and that he had cried on a weekly basis over the past two months. (*Id*.)

Medical records occurring after the date Sheard was last insured indicate that he suffered from additional mental health problems during the relevant time period. Specifically, the mental health records demonstrate that Sheard suffered from symptoms of depression and post-traumatic stress disorder which may have arisen prior to the date of onset and continued throughout his lifetime. For example, a few months after the expiration of the relevant time period, Sheard complained to his primary care physician at the VA Medical Center that he was under increased stress due to a custody battle and that he suffered from depression and a lack of motivation. (R. 264.) The physician diagnosed Sheard as suffering from depression, prescribed Fluoxetine, and referred him to the mental health clinic. (Id.)

In October 2004, Sheard sought mental health treatment from the VA mental health clinic. (R. 191-192.) Medical personnel provisionally diagnosed Sheard as suffering from depression and anxiety. (R. 192.) In addition, the results of a screening for post-traumatic stress syndrome were positive. (R. 192.)

During a mental health consultation with Dr. Alexandru Porfiriu, a VA staff psychiatrist,

---

in light of the extensive medical health records indicating Sheard suffers from depression and post-traumatic stress disorder.

on November 23, 2004, Sheard complained of suffering from depression, anxiety, tension, and insomnia over the past two to three years. (R. 193-194, 244.) Sheard also reported that he was exposed to combat in Vietnam and was subjected to sexual abuse by a family member as a child. (R. 195.) Dr. Porfiriu's impression was to rule out Major Depressive Disorder and Post-Traumatic Stress Disorder. (R. 195.) Dr. Profiriu prescribed Prozac and recommended a follow-up consultation in one month. (R. 245.) It is reasonable to assume that Sheard's post-traumatic stress syndrome arose at some point after being abused by a family member and/or serving in combat in Vietnam and was an underlying problem from the date of the traumatic event through the present.[5] The ALJ, however, ignored Sheard's diagnosis of post-traumatic stress disorder and additional medical records indicating he suffered from depression and anxiety during the relevant time period when determining he has the residual functional capacity to perform light work. The ALJ is not free to simply reject a physician's opinion without reason, nor may he pick and choose between the opinions selecting those portions which support his ultimate conclusion. The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).

More importantly, an administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). It is error for the ALJ to fail to

---

[5] The court notes that the ALJ correctly found that Sheard has no mental health related hospitalizations. (R. 19.) Nonetheless, the record indicates that Sheard's psychological problems have gradually worsened over time and that he has made a series of poor choices. For example, when a VA Medical Center medical assistant called Sheard's number regarding an appointment on September 6, 2002, a woman told her that Sheard was hiding from the police. (R. 430.) Shortly thereafter, Sheard was incarcerated for eleven months based on a theft charge; he was released from a correctional facility on June 4, 2004. (R. 194.) In March 2007, Sheard was homeless and receiving assistance from the Salvation Army. (R. 555.)

9

obtain additional testing or otherwise develop the evidence, if that information is necessary to make an informed decision. *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). The ALJ's most grievous error occurred during the administrative proceeding. Although the record is replete with references to Sheard suffering from depression, post-traumatic stress disorder, and other psychological problems, the ALJ failed to develop the record by questioning the medical expert concerning Sheard's mental impairments. During the questioning of the vocational expert, the ALJ proceeded to complete and sign a psychiatric review technique form which is normally completed by an examining mental health specialist and presented the following hypothetical:

> Q. Okay. All right, I'm gonna give you a little more detailed mental restrictions, it'll just take me a minute to fill it out. Okay, since I looked at the psychiatric review technique and noted what was indicated there, I felt like I better do a little more of an evaluation, so I'm gonna ask that this be marked as Exhibit 9F, so that we can have a good reference to it. And what I'll do is amend my first hypothetical to include mental limitations at 9F and I'll hand that to you. . . .

(R. 60-61.)

Under the circumstances of this case, the court concludes that there was sufficient information before the ALJ to require him to obtain a psychiatric or psychological evaluation about Sheard's mental impairments so he could make an informed decision. At the very least, the ALJ should be required to further develop the record by seeking the expertise of a mental health specialist to determine whether the effects of Sheard's post-traumatic stress disorder, depression, and anxiety coupled with his other physical impairments affected his ability to perform work during the relevant time period. "[I]n any case where there is evidence which

indicates the existence of a mental impairment the . . . [Commissioner] may determine that the claimant is not disabled only if the . . . [Commissioner] has made every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988). *See also Mullholland v. Astrue*, No. 1:06cv2913-AJB, 2008 WL 687326, *12 (N.D. Ga. Mar. 11, 2008) (noting that in cases involving mental illness, the opinions of mental health specialists are especially important). While the ALJ is entitled to make credibility determinations, the ALJ may not substitute his judgment for the judgments of experts in their field of expertise. Psychiatrists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment. "'Even a "mild" mental impairment may "prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.'" *Allen v. Sullivan*, 880 F.2d 1200, at 1202 (11th Cir. 1989).

By failing to seek a medical expert's opinion concerning all of the relevant mental health records, the ALJ improperly substituted his judgment for that of a psychologist with respect to the question of whether the plaintiff has a mental impairment. The court concludes that the case should be remanded to further develop the record regarding the extent of the plaintiff's mental impairments and their effects on his ability to work.

The court also questions the ALJ's reliance on GAF scores as support for his finding that Sheard is able to perform light work. The Global Assessment Functioning Scale considers the psychological, social, and occupational functioning of an individual suffering from mental illness. The Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to

11

the severity requirements of the mental disorders listings." *See* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).

Based on the inadequate development of the record concerning the severity of Sheard's post-traumatic stress disorder and other mental health impairments and the concomitant effects of these conditions on his ability to work, the court cannot determine whether the ALJ's conclusion that the plaintiff is not disabled is based on substantial evidence.[6]

### V. Conclusion

Accordingly, the decision of the Commissioner will be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

DONE this 2nd day of April, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[6] In his analysis, the ALJ noted that Sheard has "pain issues re[garding] neck, arm, face, etc., but was resistant to medical testing." (R. 23.) On remand, the court suggests that the ALJ consider that Sheard is unable to undergo an MRI or other similar testing because he has a pacemaker. (R. 325.)

14